IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EMILIO CHAVEZ,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NURSE PRACTITIONER MOLDENHAUER, NURSE PRACTITIONER CRANE, NURSE PRACTITIONER DEARMOND, LATOYA HUGHES (OFFICIAL CAPACITY ONLY), WEXFORD HEALTH SOURCES, INC., MATTHEW PLUMMER (OFFICIAL CAPACITY), and JANE DOE #'s 1-5,**<br><br>**Defendants.** | **Case No. 25-cv-1616-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Emilio Chavez, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

Now before the Court is Chavez's Motion for Emergency Relief (Doc. 29) and his Amended Motion for Emergency Relief (Doc. 32). Warden Matthew Plummer filed a response (Docs. 48, 50-52, 58) in opposition to the motion.[1]

[1] Plummer initially filed a response (Doc. 48) referencing Chavez's medical records, but the records were not attached to the pleading. Plummer was directed to file the medical records referenced in the pleading (Doc. 49). Instead, Plummer filed Chavez's full set of medical records (Docs. 50-52) making it impossible to identify the records mentioned in the pleading. The Court again instructed Plummer to file only those records referenced in the pleading as well as any updated records from July 2026 to the present (Doc. 56). Plummer was also directed to supplement his response with an affidavit from an official who was familiar with the medical records and

## Background

Chavez's First Amended Complaint (Doc. 20) alleged that he suffered an injury to his left knee, which required reconstruction of his ACL and a partial meniscectomy (Doc. 30, p. 2). Since arriving at Menard, however, Chavez alleged that he experienced delays and denials of care for his still injured knee (Doc. 30, pp. 2-8). After a review of the pleading pursuant to 28 U.S.C. § 1915A, Chavez was allowed to proceed on the following counts:

Count 1: Eighth Amendment deliberate indifference claim against Nurse Practitioner Moldenhauer, Nurse Practitioner Crane, and Nurse Practitioner Dearmond for denying and delaying medical care for Chavez's injured knee.

Count 2: Eighth Amendment deliberate indifference claim against Jane Doe #1, Jane Doe #2, Jane Doe #3, Jane Doe #4, and Jane Doe #5 for denying and delaying medical care for Chavez's injured knee.

Count 4: ADA claims for denying Chavez an accessible shower and brace for his knee.

Count 5: *Monell* claim against Wexford Health Sources, Inc. for having a practice of understaffing the healthcare unit, causing delays in Chavez's medical treatment.

Count 6: Illinois state law claim for negligence against Nurse Practitioner Moldenhauer, Nurse Practitioner Crane, and Nurse Practitioner Dearmond for denying and delaying medical care for Chavez's injured knee.

(Doc. 30, p. 10).

Chavez later filed his first motion for emergency relief (Doc. 29). He alleged that he reinjured his knee in an altercation with officers on July 29, 2026 (*Id*. at pp. 1-2). He noted that

---

Chavez's current care (Doc. 56). Plummer has now filed the relevant medical records as well as a declaration from Healthcare Unit Administrator Connie Dolce (Doc. 58).

his injury was severe and he lacked access to a crutch or cane, making walking difficult (*Id.* at p. 5). Given the seriousness of Chavez's allegations, the Court added Warden Matthew Plummer as a defendant in his official capacity to respond to the request for injunctive relief and to implement any relief that might be awarded. Plummer was directed to file a response within 14 days of service of the Amended Complaint (Doc. 30, p. 15).

Before Plummer was served, Chavez filed a motion for leave to file a supplemental motion for emergency relief (Doc. 32). In this updated motion, Chavez pointed to numerous grievances he allegedly submitted to document his medical needs. He does not attach these grievances to the motion; instead, he explains his attempts to file grievances and his belief that his attempts at exhausting were thwarted. He also discusses the alleged retaliatory actions of correctional officers, including Officers Cross and Davis who are not currently named as defendants in this case (Doc. 32-1, p. 6-7, 10-15).

Chavez further noted that he received an MRI in either May or June 2025, but he did not see a provider for the results until December 3, 2025 (Doc. 32-1, p. 7). At that time, he met with the medical director for the new healthcare provider, Centurion Health, identified as Dr. P. Devenney (*Id.*). Dr. Devenney noted that she had received numerous Chavez wanted to file a lawsuit against her (*Id.* at p. 8). Despite pleading for care, Chavez noted that Dr. Devenney refused to provide him with a cane, crutch, or any other assistive device (*Id.*). She also refused any stronger medications for his pain, but she did indicate she would refer him for additional testing for his knee (*Id.* at pp. 8-9).

In either May or June 2026, Chavez alleged that he met with Nurse Amanda regarding his knee (Doc. 32-1, p. 16). She recognized the severity of his injury and made emergency calls

to determine the status of Dr. Devenney's furlough request (*Id.*). Chavez alleged that Nurse Amanda learned that Dr. Devenney never submitted a furlough request. Nurse Amanda informed him that she could not do anything about the furlough, but she could provide him with medication and try to contact someone about scheduling an appointment (*Id.* at p. 16). Later that same month, Chavez presented again to Nurse Amanda, and he was referred to the healthcare unit because of the severity of his injury (*Id.* at p. 17). He was examined by Nurse Brandy and "Ms. G," although Chavez alleged that he has numerous grievances against Nurse Brandy and she previously threatened to deny him care (*Id.*). "Ms. G" noted the instability in his knee (*Id.*). Chavez requested a shower on gallery permit, a front cuff permit, a slow walk permit, and a cane or crutch (*Id.* at p. 18). Chavez noted the shower in the East Cellhouse is on the third floor making it difficult to walk the numerous flights of stairs to reach the shower (*Id.*). Chavez alleged that Lieutenant Hughey was present during the examination and told "Ms. G" to deny Chavez the requested permits (*Id.*). He alleged Lieutenant Hughey threatened him and stated that Chavez would see what would happen if he got the permits (*Id.*). Chavez presumably received the permits because he later noted he was transferred to the West Cellhouse in order to use his lower gallery and shower on gallery permits (*Id.* at p. 21).

Chavez alleged that sometime between March and June 2026, he encountered Warden Plummer on a tour of his gallery (Doc. 32-1, p. 20). Plummer allegedly told Chavez that he knew about his numerous grievances, but he did not care about his knee injury (*Id.*). On July 29, 2026, Chavez alleged that officers threatened him to stop filing grievances and his lawsuit (*Id.* at p. 22). They cuffed him and marched him down the hall at a pace that eventually caused

his knee to give out (*Id*. at p. 23). He fell, landing on his knee and causing severe injury (*Id*.). He was allegedly beaten by the officers and sprayed with mace (*Id*. at p. 24).

Although Chavez was later taken to the healthcare unit and examined, the nurse practitioner or nurse recognized him as a grievance writer and indicated that he was fine (Doc. 32-1, p. 25). He was sent to segregation (*Id*.). On July 31, 2026, he was placed in an interrogation room and again threatened. Officer Dallas noted that they were aware of his leg injury and that he could no longer file grievances and was having trouble getting his filings to the court (*Id*. at p. 27). The officer noted those were not accidents but were intentional because he crossed the wrong staff members by writing grievances. The officers threatened that they would keep writing disciplinary tickets against him, assault him, or even kill him if he kept writing grievances, noting that they could easily make his death look like on overdose due to the known K2 epidemic at the prison (*Id*.). Officer Dallas threatened to kill Chavez if he did not stop filing grievances and drop his lawsuit (*Id*. at p. 28).

Chavez alleged that as of the date of his filing, he had yet to be sent out for treatment for his left knee (Doc. 32-1, p. 30). He acknowledged having a few nurse sick call appointments but felt he was merely being given the runaround (*Id*.). He requested immediate care from an outside provider as well as a transfer to another prison (*Id*. at p. 31).

In response to Chavez's motion, Warden Matthew Plummer argued that Chavez failed to demonstrate that he is entitled to injunctive relief (Doc. 48). Specifically, Plummer argued Chavez failed to demonstrate a likelihood of excess on the merits of his claims. He argued that after the injuries Chavez sustained on July 29, 2026, Chavez received medical care and continues to receive medical care for his knee. On July 29, 2026, Chavez saw a nurse

on the nurse sick call line for what he labeled as chronic pain (Doc. 58-1, p. 2). Healthcare Unit Administrator Connie Dolce stated in a declaration that the nurse examining Chavez noted that Chavez's leg was not swollen and he appeared to have a normal gait (Doc. 58-2, p. 1). His left knee also appeared to be weight bearing (*Id.*). The nurse noted that Chavez was already prescribed Tylenol and Motrin, but prescribed additional dosages (Doc. 58-1, p. 2). He was not referred to the doctor but directed to return if he developed worsening symptoms (*Id.*).

On August 21, 2026, Chavez saw Dr. Devenney for his chronic knee pain (Doc. 58-1, p. 5; 58-2, p. 1). Dr. Devenney ordered an MRI and noted that Chavez would be referred for an orthopedic consult after reviewing the results of the MRI (Doc. 58-1, p. 5). Dr. Devenney also placed a hold on any physical therapy pending the results of the MRI (*Id.*). On September 3, 2026, the medical furlough clerk scheduled the MRI and on October 5, 2026 Chavez had the MRI at Carbondale Memorial Hospital (*Id.* at pp. 9, 11, 19, 22-23). The MRI noted that Chavez's previous ACL reconstruction was taut and intact, but Chavez did have a meniscus tear (*Id.* at p. 23). On October 7, 2026, a referral for a follow-up appointment with an orthopedist was submitted in light of the MRI findings (*Id.* at p. 24). It was marked as expedited (*Id.*). Dolce stated in her declaration that the referral was authorized on October 9, 2026, but the appointment has not yet been scheduled (Doc. 58-2, p. 1).

## Legal Standards

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane,

Federal Practice and Procedure §2948 (2d ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh the balance of harm to the parties if the injunction is granted or denied and evaluate the effect of an injunction on the public interest. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . " and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## Discussion

Chavez alleges that he has not received proper treatment for his knee and he recently re-injured the knee during an encounter with prison staff. He seeks the immediate transfer to

a medical facility for proper treatment. To succeed on an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must demonstrate that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must show that the defendants' actions were more than negligent, something approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

The Court finds that Chavez is not entitled to injunctive relief because he fails to demonstrate a likelihood of success on the merits of his claims. First, Chavez acknowledges that he has received treatment. He has met with nurses on several occasions, received an MRI in May/June 2025, and was told that he would be referred for further testing. Further, Chavez has received care following the July 29 incident that is the subject of his motion. Immediately after the incident, he was examined by a nurse. Although he complained of significant pain, Chavez noted that his condition was chronic and the nurse noted that he was able to bear weight on the knee and had a steady gait (Doc. 58-1, p. 2). Chavez saw Dr. Devenney in August, and she recommended an MRI and follow-up with an orthopedist. Chavez has now had the MRI which appears to show a stable ACL reconstruction and he is in the process of being referred to an orthopedic surgeon for his meniscus tear. Thus, the Court finds that Chavez is receiving care and, as a result, he fails to demonstrate that he is being treated with deliberate indifference.

Finally, the Court notes that Chavez's motion and his amended motion include additional allegations regarding acts of retaliation, excessive force, false disciplinary tickets, and other actions by nonparties. The Court previously informed Chavez that these unrelated

claims against parties not in this lawsuit could not be pursued in this case (Doc. 30, p. 15). Nor can he seek injunctive relief for the actions of nonparties. To the extent that Chavez believes he is facing retaliation or has experienced excessive force, he would need to file a new lawsuit and seek injunctive relief in that case. To the extent he seeks a transfer to another prison due to his safety concerns, that request is also unrelated to the claims in this lawsuit and his request is **DENIED**.

## CONCLUSION

For the reasons stated above, Chavez's motions for emergency relief (Docs. 29, 32) are **DENIED**.

**IT IS SO ORDERED.**

**DATED: November 4, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**